168 P.3d 258 (2007)
2007 OK CIV APP 89
Troy Timothy CLAWSON, Plaintiff/Appellee,
v.
STATE of Oklahoma, ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.
No. 104,732.
Court of Civil Appeals of Oklahoma, Division No. 1.
August 17, 2007.
Blake Virgin, Dave Stockwell, Norman, OK, for Plaintiff/Appellee.
A. DeAnn Taylor, Oklahoma Department of Public Safety, Oklahoma City, OK, for Defendant/Appellant.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 1.
KENNETH L. BUETTNER, Judge.
¶ 1 Defendant/Appellant State of Oklahoma, ex rel. Department of Public Safety, (DPS) appeals from a Judgment setting aside DPS's revocation of Plaintiff/Appellee Troy Timothy Clawson's driver's license. The District Court's decision is erroneous as a matter of law and based on insufficient evidence. Clawson stipulated to the grounds for arrest and the validity of the test. Clawson failed to present a clear and cogent rebuttal of the arresting officer's sworn statement. DPS presented uncontroverted evidence of the statutory grounds for revocation. We reverse.
¶ 2 Clawson was arrested and cited for driving under the influence of alcohol. DPS issued a revocation of his driver's license pursuant to 47 O.S.Supp.2006 § 6-205. Pursuant to 47 O.S.Supp.2005 § 755 and § 6-211, Clawson appealed the revocation by filing his Petition in the District Court February 5, 2007. He asserted DPS wrongfully revoked his driver's license based on insufficient and wrongfully obtained evidence. Clawson posted a bond to stay the revocation and sought reinstatement of his driver's license.
¶ 3 At the District Court hearing, Clawson stipulated the officer had reasonable suspicion to stop him as well as probable cause for the arrest. Clawson also stipulated to the validity of the alcohol test. Clawson challenged the arresting officer's affidavit, admitted as DPS Exhibit 1, based on two scrivener's errors. Clawson did not challenge the portions of the affidavit which are computer-printed. The unchallenged parts of the affidavit show that the arrest occurred at 11:40 p.m. September 29, 2006 in Norman. The affidavit describes Clawson's driving and demeanor to support the officer's reasonable belief Clawson was driving under the influence of alcohol. Section 6 of the affidavit shows the pre-test deprivation period began *260 at midnight and ended at 12:16 a.m. Clawson's blood alcohol level was .20g/210L at 12:17 a.m. and .19g/210L at 12:20 a.m. The legal limit is .08g/210L. The arresting officer signed the test results. The affidavit gave notice that the subject's driver's license was revoked if the test result was greater than .08g/210L.
¶ 4 The scrivener's errors are in Sections 4 and 5 of the affidavit. Section 4 provides a space for writing the date notice of revocation was served. The officer wrote "6/30/06" and signed his name and badge number. The error there was apparently a 6 instead of 9 for the month. The trial court found this error was irrelevant because Clawson timely sought an administrative hearing and clearly received the notice.
¶ 5 Section 5 is a space for notarization of the affidavit. The section is properly filled in except for the date is written as "29" September instead of "30" and there appears to be a "1" written under the "2" in "29." The notary testified that she started her shift at 11:00 p.m. on September 29, 2006, and must have not realized it was after midnight, and therefore September 30, when she notarized the affidavit. She testified the officer was standing in front of her when he signed the form on September 30, 2006. The arresting officer testified that the affidavit is printed by the blood alcohol testing, device and therefore it was impossible for it to have been printed or signed before September 30. He also testified he was standing in front of the notary when he signed the affidavit on September 30, 2006.
¶ 6 The trial court announced that DPS could not impeach its evidence with its own testimony. The court found that the affidavit was the best evidence and that DPS was bound by it. The trial court found the affidavit and notice of revocation was defective and set aside the revocation. DPS appeals the trial court's decision to set aside the revocation based on the incorrect date in the notary portion of the affidavit.
¶ 7 On appeal from orders of implied consent revocations, an appellate court will not reverse the district court's findings unless they are erroneous as a matter of law or lack sufficient evidentiary foundation. Hollis v. State ex rel. Dept. of Public Safety, 2006 OK CIV APP 25, 131 P.3d 145, cert. denied.
¶ 8 The applicable statute here is 47 O.S.Supp.2005 § 754(C).[2] It requires a sworn report from the arresting officer. In Chase v. State ex rel. Dept. of Public Safety, 1990 OK 78, 795 P.2d 1048, the Oklahoma Supreme Court noted the statute, 47 O.S. § 754, requires two things for revocation: 1) written results showing blood alcohol level above the legal limit, and 2) the arresting officer's sworn report. Id. at 1049, n. 1. In Chase, the court held that where the affidavit was sworn to by the officer conducting the breath test, rather than the arresting officer, the affidavit contained a fatal flaw. The court set aside the revocation on that basis. The Supreme Court rejected the argument that certification by the breath test operator was necessary, finding that § 754 contained no such requirement. Id. at 1050.
¶ 9 However, in Chase, the name of the affiant on the officer's sworn affidavit differed from the signature. The testimony showed the signature was not that of the arresting officer. The court found therefore that the officer's sworn statement was not sufficient to satisfy § 754. In Chase, there was no discussion of whether DPS attempted to correct the defect through testimony.
*261 ¶ 10 The Oklahoma Supreme Court later found that "the arresting officer signed a statement verifying the truth of the affidavit. He did so in the presence of the attesting notary public. These acts are sufficient for purposes of section 754 to constitute a sworn statement." Cheek v. State ex rel. Dept. of Public Safety, 1991 OK 68, 813 P.2d 1049, 1050. In Cheek, the issue was the arresting officer's failure to orally affirm or swear to the affidavit when the officer signed the affidavit in the notary's presence. The court held that merely signing the affidavit in the presence of a notary is sufficient. Id.
¶ 11 In Browning v. State ex rel. Dept. of Public Safety, 1991 OK CIV APP 19, 812 P.2d 1372, the Oklahoma Court of Civil Appeals distinguished Chase, finding that the deficiency in Chase was confirmed by the testimony that the arresting officer did not sign the affidavit. In Browning, the arresting officer failed to include the controlled test result in the affidavit. The court held that the deficiency could be cured by testimony by the officer that he had conducted the reference test, along with admission of a log of tests of the blood-alcohol testing machine. Id. at 1375.
¶ 12 The Oklahoma Court of Civil Appeals, citing the Oklahoma Title Examination Standards, has held that testimony may correct a scrivener's error in the date of a notarized mortgage release. Nay v. First Financial Bank, 2003 OK CIV APP 91, 79 P.3d 1124, 1128.
¶ 13 Finally, the Oklahoma Supreme Court's decision in Slay v. State, ex rel. Dept. of Public Safety, 2000 OK 11, 997 P.2d 160 requires reversal here. In that case, the notary's seal was too faint to read. The driver complained that the affidavit therefore failed to be "sworn" as required by the statute. The Supreme Court noted that
Oklahoma's extant jurisprudence recognizes that an acknowledgment is prima facie evidence of a document's execution. There is imposed upon one who seeks to impeach a certificate of acknowledgment-which substantially complies with the law-the burden of producing evidence which is `clear, cogent, and convincing, and . . . produces a conviction amounting to a moral certainty that the certificate is false.'
Id. at 162-163, citing Probert v. Caswell et ux., 1923 OK 242, 215 P. 733, 734, 90 Okla. 67; Dyal v. Norton, 1915 OK ___, 150 P. 703, 47 Okla. 794. Most importantly for this case, the court held that testimony by the officer could explain the affirmation: "the visible facsimile of the seal on the Affidavit when considered in conjunction with the officer's testimony that he swore to the affidavit in the presence of a notary public prevails over Slay's failure to adduce any evidence which amounts to a `clear and cogent' rebuttal of the acknowledgment's legal efficacy." Id. at 163. The court noted also its earlier holding that "the absence of a notary public's seal on an initiative petition constitutes a technical error which may be later corrected." Id. at n. 9, citing In re Initiative Petition No. 224, State Question No. 314, 197 Okla. 432, 172 P.2d 324, 328 (Okla.1946). (Emphasis added).
¶ 14 Clawson failed to adduce a clear and cogent rebuttal of the affidavit's legal efficacy. He stipulated that the arrest and test result were valid. The affidavit constitutes the statutorily required sworn statement of the arresting officer. The arresting officer and the notary both testified that the affidavit was sworn in the presence of the notary on September 30, 2006. We have found no authority that a scrivener's error in the date is a fatal flaw in the affidavit. The incorrect date in the notarized portion of the affidavit was the only basis for the trial court's decision to set aside the revocation. Where the date of notarization is the issue, the best evidence rule, 12 O.S.2001 § 3002, does not apply, and oral testimony of the date may be used to correct a scrivener's error on the affidavit. The trial court's decision is erroneous as a matter of law and lacks sufficient evidentiary support.
REVERSED.
HANSEN, P.J., and JOPLIN, J. (sitting by designation), concur.
NOTES
[2] That subsection provides (emphasis added):

C. Upon receipt of a written blood or breath test report reflecting that the arrested person, if under twenty-one (21) years of age, had any measurable quantity of alcohol in the person's blood or breath, or, if the arrested person is twenty-one (21) years of age or older, a blood or breath alcohol concentration of eight-hundredths (0.08) or more, accompanied by a sworn report from a law enforcement officer that the officer had reasonable grounds to believe the arrested person had been operating or was in actual physical control of a motor vehicle while under the influence of alcohol as prohibited by law, the Department shall revoke or deny the driving privilege of the arrested person for a period as provided by Section 6-205.1 of this title. Revocation or denial of the driving privilege of the arrested person shall become effective thirty (30) days after the arrested person is given written notice thereof by the officer as provided in this section or by the Department as provided in Section 2-116 of this title.